UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

LAMON R. VICK,

    Plaintiff,

v.

JOSEPH MEKO, WARDEN, *et al.*,

    Defendants.

Civil Action No. 0:16-CV-59-HRW

**MEMORAMDUM OPINION AND ORDER**

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Plaintiff Lamon R. Vick is an inmate confined by the Kentucky Department of Corrections ("KDOC") at the Northpoint Training Center in Burgin, Kentucky.[1] Proceeding pro se, Vick has filed a civil rights complaint [D. E. No. 1] asserting claims under 42 U.S.C. § 1983 against four LSCC officials.[2] Vick alleges that on March 29, 2016, the named defendants violated his various federal constitutional rights. In a separate Order, Vick has been granted *in forma pauperis* status.

The Court conducts a preliminary review of Vick's § 1983 complaint because he asserts claims against government officials, and because he has been

---

[1] When Vick filed this action on May 16, 2016, he was confined at the Little Sandy Correctional Complex ("LSCC") located in Sandy Hook, Kentucky. On May 25, 2016, Vick notified the Court of his transfer to the Northpoint Training Center [D. E. No. 5]

[2] The named defendants are: (1) Joseph Meko, Warden of the LSCC; (2) Ricky Lewis, Correctional Officer of the LSCC; (3) Aaron Holdbrook, Lieutenant of Internal Affairs of the LSCC; and (4) Holly D. Finch, Captain of the LSCC.

granted *in forma pauperis* status in this action. 28 U.S.C. §§ 1915(e)(2); 1915A. In such cases, a district court must dismiss any action which (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *Id.*

Because Vick is proceeding without an attorney, the Court liberally construes his claims and accepts his factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). As explained below, the Court will dismiss several of Vick's allegations with prejudice because they fail to state a claim upon which relief can be granted, but the Court will dismiss one of Vick's claim without prejudice.

## ALLEGATIONS OF THE § 1983 COMPLAINT

Vick alleges that he ordered five books on the subject of photography, one of which was from Denison University, and that he submitted his book selections to the LSCC librarian, who approved all of them. When the photography book from Denison University arrived, LSCC warehouse supervisor Randy Lewis inspected it and determined that it contained inappropriate sexually explicit photographs of children. [D. E. No. 1, pp. 2-3] Vick never received that book.

Vick states that on March 29, 2016, he was handcuffed, put in a segregation cell which he describes as the "hole," and that although he "has no history of

sexual deviance," he received a "major category disciplinary report of child porn" and was confined in "the hole" for six days. [*Id.*, p. 3] Vick states that while he was confined in "the hole" during those six days, he remained in "lock down" status for 23 hours a day. [*Id.*] Vick also alleges that his cell mate was subjected to a four-hour "part strip/cell search." [*Id.*]

Vick asserts that he was placed in the "hole" was without due process, in violation of his rights guaranteed by the Eighth Amendment of the U.S. Constitution, which prohibits cruel and unusual punishment, and in violation of the Fourteenth Amendment, which guarantees due process of law. [*Id.*, p. 4, § III (D)] Vick seeks an investigation into the alleged violation(s) of due process at the LSCC, and the "abusive implementation of the segregation unit." [*Id.*, p. 8, § VI] Vick also demands $600.00 in compensatory damages ($100.00 for each day that he was confined in the "hole"), unspecified punitive damages against the defendants, and his court costs and fees. [*Id.*]

## DISCUSSION

### 1.    Claims Challenging Six-Day Placement in Segregation Unit

Vick alleges that he received a "major category disciplinary report of child porn," *see* D. E. No. 1, p. 3. That statement clearly indicates that Vick was *charged with* a prison disciplinary infraction, but Vick does not allege that he was

3

actually *convicted of* the charged offense, or if he was convicted, whether he was ordered to forfeit any good-time credit as a result of the disciplinary conviction.[3] Vick did not attach to his § 1983 complaint either the disciplinary charge filed against him on March 29, 2016, or any documentation revealing the outcome of the disciplinary charge, *i.e.*, whether he was convicted of the offense and lost any good-time credits. In his complaint, Vick alleges only that he was confined in segregation unit known as "the hole" for six days.

To state a procedural due process claim under § 1983, a plaintiff must allege facts showing he possessed a protected liberty or property interest, and that he was deprived of that interest without due process. *See Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.1999), *cert. denied*, 529 U.S. 1020 (2000). To ascertain if a liberty interest exists, the United States Supreme Court has announced a rule which requires district courts to examine the nature of the deprivation itself. *See Sandin v. Conner*, 515 U.S. 472, 481 (1995). Under the Supreme Court's analysis in *Sandin*, the seriousness of the deprivation suffered guides the recognition of state-created liberty interests.

---

[3] According to the KDOC's website, Vick's minimum expiration of sentence date ("Good Time Release Date") is November 19, 2021; his maximum expiration of sentence date is January 8, 2025. *See* http://kool.corrections.ky.gov/KOOL/Details/34250 (last visited on May 19, 2016). If Vick did in fact lose good-time credits as result of the disciplinary charge filed against him, such a loss would affect (and extend) the overall duration of the sentence which he is serving. That issue will be discussed later in this Order.

A prisoner can claim a protected liberty interest under two instances. First, where the actions of prison officials have the effect of altering (*i.e.*, extending) the term of an inmate's imprisonment, the Due Process Clause is implicated. *Sandin*, 515 U.S. at 487. "[U]nder *Sandin* a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence...." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998). Second, a liberty interest may be found where the restraints imposed by the state amount to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

In *Sandin*, the Supreme Court held that a 30-day period of confinement in disciplinary segregation for 23 hours and 10 minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" for an inmate serving an indeterminate sentence of 30 years to life. 515 U.S. at 486. *See also Jones*, 155 F.3d at 812; *Ford v. Harvey*, 106 F. App'x. 397 (6th Cir. 2004) (State prisoner's placement in disciplinary confinement did not implicate a liberty interest entitled to due process protection, where it was neither accompanied by loss of good time credits nor lasted for a significant period of time causing an unusual hardship on prisoner); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997), *cert. denied*, 522 U.S. 848 (1997); *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th

5

Cir. 1995). Thus, under *Sandin*, an inmate has no liberty interest in remaining free from disciplinary or administrative segregation where the State's action does not inevitably affect the duration of his sentence, or where the segregation itself does not impose an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Sandin*, 512 U.S. at 483.

Applying those concepts here, Vick broadly alleges that his six-day placement in the segregation unit known as the "hole" was carried out in violation of his right to due process guaranteed under the Fourteenth Amendment of the U.S. Constitution. But again, Vick does not allege that he was *convicted* of disciplinary charge, or, if he was convicted of the charge, that he *lost any good-time credits* as a result of the disciplinary charge, thus lengthening his prison sentence. Lacking any facts indicating that Vick lost good-time credits which would cause him to serve prolonged or extended prison sentence, the Court concludes that Vick did not have a protected right under the Fourteenth Amendment to remain fee from placement in segregation or administrative detention, and that Vick was not entitled to any "due process" prior to his six-day placement in that segregation unit.

Next, applying *Sandin* to Vick's allegation that his confinement in the segregation unit for six days violated his Eighth Amendment rights, the Court reaches the same result: no constitutional violation. To establish a claim of cruel

6

and unusual punishment, a prisoner-plaintiff must satisfy an objective element of the Eighth Amendment analysis, which requires him to show that the conditions of confinement involved the wanton and unnecessary infliction of pain, were grossly disproportionate to his crimes, or constituted a deprivation of minimal civilized measures of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A prisoner-plaintiff must also satisfy the subjective element of the analysis, which requires him to demonstrate that the prison officials acted with deliberate indifference. See *Wilson v. Seiter*, 501 U.S. 294 (1991).

Vick's allegations satisfy neither the objective nor the subjective criterion of the Eighth Amendment analysis. Long-standing case law suggests that confinement in disciplinary segregation for a mere six (6) day period does not amount to an atypical and significant hardship in violation of the Eighth Amendment. *Sandin*, 515 U.S. at 486; *Rimmer-Bey*, 62 F.3d at 790-91 (no *Sandin* violation where inmate serving life sentence was placed in segregation after serving 30 days of detention for misconduct conviction of conspiracy to commit assault and battery); *Smith v. Corrections Corp. of America*, 5 F. App'x 443, 444 (6th Cir. 2001) (thirty days of disciplinary segregation does not rise to level of atypical and significant hardship); *Jones*, 155 F.3d at 812 (administrative segregation for two and a half years did not satisfy *Sandin*); *Mackey v. Dyke*, 111

F.3d 460, 463 (6th Cir. 1997) (no *Sandin* violation where inmate served two years in segregation while being investigated for murder of prison guard in riot; confinement was not atypical or a significant hardship in relation to prison life); *Collmar v. Wilkinson*, 187 F.3d 635, 1999 WL 623708, at *3 (6th Cir. 1999) (30 days in Security Control, 14 days in Disciplinary Control and six to eight months in Administrative Control were not atypical hardship under *Sandin*); *Albiola v. Pugh*, No. 4:14-CV-1645, 2015 WL 1915289, at * 6 (N.D. Ohio Apr. 27, 2015) (finding no violation of *Sandin* where the prisoner spent a total of 137 days in administrative segregation, describing the duration "… not indefinite, nor was it exceptionally long in duration," and noting that "The Sixth Circuit has found no liberty interest in much longer periods of time in administrative segregation.").

Finally, Vick's allegation he remained in lock-down status for 23 hours a day during his six-day confinement in "the hole" does not change the outcome of his Eighth Amendment claim. In *Sandin*, the Supreme Court noted that inmates in the general population also experienced significant amounts of lockdown time, and that the degree of confinement in disciplinary segregation was not excessive. *Sandin*, 515 U.S. at 486; *see also Johnson v. Mohr*, No. 2:15-CV-86, 2015 WL 1526804, at *3 (S.D. Ohio Apr. 3, 2015) (rejecting prisoner's claim alleging that he was on lock-down for 23 hours per day with only one hour permitted for

8

recreation); *Montague v. Schofield*, No. 2:14-CV-292, 2015 WL 1879590, at *9 (E.D. Tenn. Apr. 22, 2015) (dismissing prisoner's claim challenging his placement in lock-down status because the placement did not violate *Sandin*); *Brown v. Rushing*, No. 4:10-CV-546, 2010 WL 1924500, at *4 (N.D. Ohio May 11, 2010) (temporary prison lock-down and other unpleasant conditions did not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); *Schroeder v. Corr. Corp. of America*, 4:07-CV-3832, 2008 WL 373478, at *2 (N. D. Ohio Feb. 8, 2008) (prisoner's five-day confinement in lock-down status did not violate *Sandin*).

In summary, Vick has not demonstrated a denial of due process regarding his placement in segregation because he enjoyed no liberty interest in remaining free from disciplinary segregation, absent an atypical and significant hardship such as the loss of good time credits. *Sandin*, 515 U.S. 485-87; *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Further, the Court finds no Eighth Amendment violation as to Vick's challenge to his six-day confinement in "the hole."

### 2. Claims Challenging Possible Loss of Good-Time Credit

Broadly assuming Vick was convicted of the charged offense **and** that he was in fact ordered to forfeit good-time credits, Vick may be challenging the

forfeiture of those good-time credits in this § 1983 action. But Vick cannot seek cannot seek damages under § 1983 unless and until he can demonstrate a favorable termination of his disciplinary conviction.

In *Heck v. Humphrey*, the Supreme Court established the so-called "favorable termination rule." 512 U.S. 477, 114 S.Ct. 2364 (1994). In *Heck*, the Supreme Court held that any claim for damages that, if successful, would "necessarily imply" the "invalidity of any outstanding criminal judgment against the plaintiff" is not cognizable in a civil rights action unless the plaintiff demonstrates that judgment's prior invalidation. *Id.*, at 487 This rule promotes the finality of and consistency in judicial resolutions by limiting opportunities for collateral attack and averting the "creation of two conflicting resolutions arising out of the same or identical transaction." *See id.*, at 484-485.

Later, in *Edwards v. Balisok*, the Supreme Court later extended the "favorable termination rule" to a prison disciplinary hearing resulting in the deprivation of good-time credits, where the prisoner's civil rights action alleging the denial of his due process rights would "necessarily imply" the invalidity of the deprivation of good-time credits. 520 U.S. 641, 646 (1997). The Supreme Court has subsequently clarified that a prisoner must show a favorable termination of his

disciplinary proceeding before filing a civil action in cases where the duration of his sentence has been affected. *See Muhammad v. Close*, 540 U.S. 749 (2004).

Thus, a prisoner found guilty in a prison disciplinary hearing cannot use 42 U.S.C. § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction. *Lewis v. Pendell*, 90 F. App'x 882, 883 (6th Cir. 2004) (prisoner was precluded from collaterally attacking prison misconduct hearing or conduct underlying disciplinary conviction by alleging retaliation under 42 U.S.C. § 1983, where favorable ruling on his retaliation claim would imply invalidity of disciplinary conviction); *Denham v. Shroad*, 56 F. App'x 692, 693 (6th Cir. 2003) ("Because a favorable ruling on Denham's Eighth Amendment claim [alleging excessive use of force by prison officials] would imply the invalidity of his disciplinary conviction, this claim is not cognizable."); *Huey v. Stine*, 230 F.3d 226, 230-31 (6th Cir. 2000).

To establish a "favorable termination," Vick must first successfully challenge the validity of his disciplinary conviction by filing of writ of habeas corpus pursuant to 28 US.C. § 2254. **If, and only if**, Vick's prison disciplinary conviction is invalidated during that process, may he then bring a civil action for the alleged harm caused by the actions which resulted in his disciplinary conviction and the loss of his good-time credits, if any were lost. Vick's construed

11

claim challenging his disciplinary conviction (if any) and the loss of good-time credits (if any) will be dismissed without prejudice to his filing a writ of habeas corpus under 28 U.S.C. § 2254, and obtaining a favorable termination of that disciplinary conviction through that process.

### 3. Claims Asserted on Behalf of LSCC Other Inmates

Finally, Vick complains that his cell-mate was subjected to an unreasonable search by LSCC officials, asking the Court to investigate various alleged improper practices at LSCC. Thus, Vick appears to be asserting the constitutional claims of other prisoners, but absent a request for certification of this matter as a class action lawsuit under Federal Rule of Civil Procedure 23, Vick's claims challenging conditions at the LSCC are limited to alleged violations of his *own* constitutional rights. *See Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989). The Sixth Circuit has followed the rule announced in *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975), that *pro se* prisoners generally may not bring class action lawsuits concerning prison conditions. *See Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992); *Dean v. Blanchard*, 865 F.2d 257, 1988 WL 130851, at *1 (6th Cir. Dec. 8, 1988); *Inmates,*

*Washington Co. Jail v. England*, 516 F. Supp. 132 (E.D.Term.1980), *aff'd*, 659 F.2d 1081 (1981).

In summary, Vick lacks standing either to remedy the alleged constitutional violations of other LSCC prisoners or to seek injunctive relief on their behalf, and his claims are therefore limited to alleged violations of his own constitutional rights. However, the Court has previously determined that Vick's constitutional rights were not violated, so this action will be dismissed as set forth below.

## CONCLUSION

Accordingly, the Court being duly advised, **IT IS ORDERED** as follows:

1. Plaintiff Lamon R. Vick's Eighth and Fourteenth Amendment claims challenging his six-day placement in the segregation unit at the LSCC beginning on March 29, 2016, are **DISMISSED WITH PREJUDICE.**

2. Vick's construed Fourteenth Amendment claim challenging the possible loss of good-time credits stemming from a disciplinary charge issued against him at the LSCC on or about March 29, 2016, is **DISMISSED WITHOUT PREJUDICE** to Vick's right to seek a favorable termination of that disciplinary conviction, if such disciplinary conviction occurred, and if Vick's good-time credits were ordered to be forfeited.

13

3. Vick's Eighth and Fourteenth Amendment claims asserted on behalf of other LSCC inmates, challenging the conditions of confinement at the LSCC, are **DISMISSED WITH PREJUDICE**.

4. The Court will enter an appropriate Judgment.

5. This proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

This June 6, 2016.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge